UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEBREMEDHIN HADERA,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>  Defendant.<br>_____/ | No. C-12-5315 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 12, 17)** |

## I. INTRODUCTION

Pending before the Court are cross motions for summary judgment in this social security appeal.[1] Docket Nos. 12, 17. Plaintiff filed this social security appeal on October 15, 2012, and argues that he is entitled to remand because (1) the Administrative Law Judge erred in concluding that he did not have a severe mental impairment; and (2) there is new material evidence related to his physical and mental impairments that has emerged since the ALJ issued her decision.

## II. FACTUAL & PROCEDURAL BACKGROUND

On July 22, 2007, Plaintiff, who was then working as a kitchen utility worker, suffered a workplace injury when he fell while trying to lift a heavy tray of dishes. AR 22, 298. Over the next two years, he underwent three surgeries to repair inguinal and umbilical hernias, and had apparently

---

[1] This case is currently captioned *Hadera v. Astrue*, but since Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2012, Defendant has asked that she be substituted as the named defendant.

related ongoing problems with pain and neuralgia. AR 22-25. During this time, he also was treated for chronic left ankle strain and in 2010 was diagnosed with degenerative disc disease. AR 23-25. Also beginning in 2010, he began seeing a therapist, who originally diagnosed him with adjustment disorder, and later revised her diagnosis to depressive disorder, NOS. AR 21, 594.

Plaintiff filed an application for disability benefits on April 30, 2009. AR 18, 72. He claimed a period of disability starting July 22, 2007 and continuing. AR 153, 155. His request was initially denied by the Social Security Administration on June 23, 2009, and his request for reconsideration was denied on February 8, 2010. AR 76, 85. Plaintiff requested a hearing before an Administrative Law Judge, which was held before ALJ Caroline H. Beers on April 19, 2011. AR 38. ALJ Beers issued her decision on May 20, 2011. AR 18.

The ALJ evaluated Plaintiff's disability claim using the five-step sequential evaluation process for disability required under federal regulations. *See* 20 C.F.R. § 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his on-the-job injury on July 22, 2007. AR 20.

Turning to step two, the ALJ found that Plaintiff did have a severe impairment due to his physical health problems. AR 20-21. Specifically, the ALJ found that Plaintiff had the following severe impairments: bilateral inguinal hernia and umbilical hernia, status post two surgical repairs and right orchiectomy, left ankle pain, neuropathy, right lumbrosacral radiculopathy at L5, and cervical degenerative disc disease at C5-6. AR 20.

The ALJ found, however, that Plaintiff did not have any severe impairment due to mental health issues. AR 20-21. She noted that Plaintiff had not explicitly alleged a mental impairment, but had submitted a report by a Natasha Molony, Psy.D. from February 18, 2011. AR 21, 594. Though Dr. Molony had opined that Plaintiff's depressed mood, low frustration tolerance, and increased irritability would impair his ability to work, she did not identify specific functional limitations, nor did she rate the severity of his symptoms. AR 21. The ALJ thus concluded that Plaintiff had not met his burden of showing that he had a severe mental impairment. *Id.*

Since Plaintiff had established severe impairments due to his physical health problems, the ALJ continued to steps three through five of the analysis. At step three, the ALJ found that Plaintiff's impairments did not meet one of the listed impairments in 20 C.F.R. Part 404. AR 21. The ALJ then considered Plaintiff's medical history and current condition, and concluded that he had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). AR 21-27. In this analysis, she did not consider functional limitations from any mental impairment. AR 21-27.

In reaching this conclusion, the ALJ rejected the opinions of Dr. Nirmala Kannan, who had begun treating Plaintiff in December 2009 after he moved to California, and Dr. Vicky Economou, who examined Plaintiff in April 2010. AR 24-26. Dr. Kannan had concluded that Plaintiff had been disabled since February 2008 and that he would never be able to work again. AR 25. Dr. Economou had found that Plaintiff had various functional limitations on walking, standing, sitting, lifting, bending, and stooping that exceeded the limitations in the ALJ's finding. AR 25-26. The ALJ rejected the opinions of these two doctors because (1) neither had reviewed records from before December 2009; (2) their clinical findings were mild or non-existent; and (3) they seemed to uncritically accept the subjective reports of Plaintiff, which the ALJ found to be exaggerated. AR 26. Plaintiff does not challenge these findings.

Based on the finding that Plaintiff was capable of performing light work, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 27-28. She noted that the vocational expert had identified three categories of light work Plaintiff could perform, and three categories of sedentary work. AR 28. She acknowledged,

however, that given Plaintiff's age, he would be considered disabled under Medical Vocational Rule 201.09 were he limited to sedentary work. AR 28. The ALJ concluded that Defendant was not disabled at any point from April 30, 2009 on, and denied benefits. AR 28-29. The Appeals Counsel denied Plaintiff's request for review on September 5, 2012. AR 1. Plaintiff now seeks judicial review of the Commissioner's denial of benefits through this action.

### III.   DISCUSSION

The Social Security Act provides two different grounds on which a district court may remand Social Security appeals to the Commissioner. 42 U.S.C. § 405(g); *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993) ("In cases reviewing final agency decisions on Social Security benefits, the exclusive methods by which district courts may remand to the Secretary are set forth in sentence four and sentence six of § 405(g)"). First, sentence four of § 405(g) provides that, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Second, sentence six of § 405(g) provides for remand provides, *inter alia*, that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

Here, Plaintiff seeks a remand under both sentence four and sentence six. He argues that he is entitled to a sentence four remand because the ALJ erred in her determination that Plaintiff does not have a substantial mental impairment. He also argues that he is entitled to a sentence six remand because there is new material evidence relating to his physical and mental impairments that was for good cause not submitted to the ALJ prior to the issuance of her decision.

A.   ALJ's Finding of No Substantial Mental Impairment

Plaintiff argues that he is entitled to a remand because the ALJ erred in finding that he had no significant mental impairment. He argues that Dr. Molony's report established that he had symptoms sufficient to constitute a "severe" impairment within the meaning of the step two analysis,

and that in any case the ALJ had a duty to supplement the record if she found Dr. Molony's report unclear.

A court may disturb the final decision of the Social Security Administration "only if it based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir.1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir.1993). Substantial evidence requires "more than a mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir.1990) (citations omitted). The court's review "must consider the record as a whole," and consider both that which supports as well as that which detracts from the Secretary's decision. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1984).

Though this standard of review is generally deferential, the Ninth Circuit has noted in reviewing claims rejected at step two in the ALJ's analysis that "the step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals ability to work.' " *Id.* (citing SSR 85–28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28)). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. 85-28). On review, therefore, the question is "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the plaintiff] did not have a medically severe impairment or combination of impairments." *Id.*

Moreover, "[t]he ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996))

5

(internal quotation marks omitted). This duty applies even where the claimant is represented. *Id.* This duty is heightened where the claimant is potentially mentally ill, and thus may have difficulty protecting his or her own interests. *Id.* The duty to develop the record is triggered where the evidence is ambiguous, or where the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Id.* However, "[a] specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). In order to supplement the record, the ALJ may subpoena the claimant's physicians, submit questions to the physicians, continue the hearing, or keep the record open after the hearing to allow the filing of supplementary evidence. *Tonapetyan*, 242 F.3d at 1150.

Here, the ALJ found that the Dr. Molony's report was insufficient to meet Plaintiff's burden of establishing that he had a severe mental impairment. The ALJ summarized Molony's report as follows:

> there is a report by Natasha Molony, Psy.D., dated February 18, 2011, stating that the claimant was seen 19 times since February 19, 2010. The claimant originally was diagnosed with an adjustment disorder with depressed mood but that diagnosis was updated to a depressive mood disorder NOS; no date was given for the latter diagnosis. The claimant reported chronic physical pain that he said led to sleep disturbances, lowered frustration tolerance, irritability, and depressed mood. Dr. Molony observed that the claimant alternated sitting and standing every 30 minutes during sessions. She believes his depressed mood, lowered frustration tolerance, and increased irritability would interfere with his ability to work. She indicated that the claimant believes he has not been able to work since 2008, but Dr. Molony did not offer such an opinion. She also did not describe whether the claimant was receiving any medications for his depression, a prognosis, or the level of severity of his symptoms, such as mild, moderate, or serious. Therefore, although this evidence suggests later onset of a depressive disorder, no functional limitations were identified and at this time, the claimant has not proven that he has a "severe" mental impairment.

AR 21.

While it is true that Dr. Molony does not specifically identify the severity of Plaintiff's symptoms or provide exact functional limitations, her report does provide some evidence that Plaintiff's mental health would have a more than minimal effect on his ability to work. She noted that his symptoms had affected his relationship with his wife and children in that he was impatient

6

1  and quick to anger. AR 594. She also indicated that Plaintiff reported having withdrawn from many
2  of his previous social interactions because of his increased irritability and depressed mood. AR 595.
3  Plaintiff further reported that his irritability and depression had negatively impacted his
4  concentration, which increased the time it took him to complete tasks. *Id.* Dr. Molony concluded
5  that "it seems reasonable to estimate that [Plaintiff] would have difficulty handling normal work
6  stress based on his lowered frustration tolerance and increased irritability." *Id.*

7  The record before the ALJ thus contained evidence that Plaintiff had significant mental
8  health symptoms that had interfered with his other social relationships, and that his therapist
9  believed would interfere with his ability to function at work. Given this, it cannot be said that "the
10 ALJ had substantial evidence to find that the medical evidence *clearly established* that [the plaintiff]
11 did not have" a severe impairment due to his mental health. *Webb*, 433 F.3d at 687. Indeed, the
12 ALJ did not purport to so find, but merely found that though there was evidence of a depressive
13 disorder, Plaintiff had not met his burden because Dr. Molony's report did not specifically identify
14 any functional limitations. AR 21. This analysis did not meet the "clearly established" standard
15 applicable to step two.

16 Moreover, as the ALJ apparently found Dr. Molony's report insufficiently detailed to
17 determine whether Plaintiff had a severe mental impairment, she had an affirmative duty to
18 supplement the record, particularly given that Dr. Molony's report contained strong indications that
19 Plaintiff's mental health symptoms could interfere with social interactions in a way that would limit
20 his ability to work. *See McLeod*, 640 F.3d at 885. The ALJ did not do so. She did not request
21 further clarification from Dr. Molony, nor did she allow or invite Plaintiff the opportunity to submit
22 additional evidence on his mental impairments.

23 Defendant argues that Plaintiff's argument on this point is moot, because the ALJ found that
24 Plaintiff had a severe impairment based on his physical impairments, and thus continued to the later
25 steps of the analysis. Once an ALJ passes the step two threshold, she must look to the entire record
26 and "consider the 'combined effect' of all the claimant's impairments without regard to whether any
27 such impairment, if considered separately, would be of sufficient severity." *Howard ex rel. Wolff v.*
28 *Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing 20 C.F.R. § 416.923). Defendant thus argues

1  that since the ALJ reached the later parts of the analysis based on a finding that Plaintiff had severe
2  physical impairments, the ALJ was then required to consider Plaintiff's mental impairments in
3  determining his residual functional capacity, even if the ALJ had previously determined them to be
4  non-severe at the step two stage.

5       In actuality, however, the ALJ did not do this. Nowhere in the ALJ's analysis of Plaintiff's
6  residual functional capacity does she consider the effect of Plaintiff's mental health. AR 21-27.
7  Further, even if the ALJ had considered Plaintiff's mental health symptoms in the this analysis, it
8  would not have obviated the need to supplement the record to determine with more certainty the way
9  in which Plaintiff's mental health symptoms impacted his ability to work.

10      Since there was not substantial evidence to support a finding by the ALJ's that the medical
11 evidence clearly established that Plaintiff had no severe mental impairment, and since the ALJ failed
12 to supplement the record to determine the effect of Plaintiff's mental health symptoms on his ability
13 to work, Plaintiff here is entitled to a sentence four remand.

14 B.    <u>New Material Evidence</u>

15      Plaintiff additionally contends that he is entitled to a remand because there is new, material
16 evidence that establishes that he is entitled to disability benefits. Sentence Six of 42 U.S.C. § 405(g)
17 provides, in relevant part, that "the court may . . . at any time order additional evidence to be taken
18 before the Commissioner of Social Security, but only upon a showing that there is new evidence
19 which is material and that there is good cause for the failure to incorporate such evidence into the
20 record in a prior proceeding." *Akopyan v. Barnhart*, 296 F.3d 852, 854–55 (9th Cir.2002)
21 ("Sentence six remands may be ordered in only two situations: where the Commissioner requests a
22 remand before answering the complaint, or where new, material evidence is adduced that was for
23 good cause not presented before the agency.") (citation omitted).

24      New evidence is considered material if it "bears directly and substantially on the matter in
25 dispute, and if there is a reasonable possibility that the new evidence would have changed the
26 outcome of the determination. " *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir.2001) (quoting
27 *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.1984) (internal quotation
28 marks, alterations and citations omitted) (emphasis omitted)). With respect to good cause, "[i]f new

8

information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985) (citing *Booz*, 734 F.2d at 1380).

Plaintiff identifies two categories of new evidence in his motion for summary judgment. Pl.'s Mot at 12. First, he offers psychological reports from his therapists as well as the results of two neuropsychological examinations. Docket No. 14-1; Docket No. 13-3. Second, he offers the report from an MRI of his lumbar spine taken on September 26, 2012, and the subsequent, related recommendations of a neurosurgeon. Docket No. 13-1. Plaintiff submitted one of the treating therapist's reports to the Appeals Council, but the Council rejected this information as relating to a time period after the ALJ's decision had already issued, and thus irrelevant. AR 2. Most of the remaining documents date from after the Appeals Council rejected Plaintiff's appeal.

1.   New Psychological Evidence

Plaintiff submits two new psychological reports produced by therapists he has seen at the Portia Bell Hume Behavioral Health and Training Center. Docket No. 14-1. He argues that the reports are material in that they "flesh out the nature and severity of Mr. Hadera's mental condition, prove that his severe depression is likely disabling, and show that it has lasted at least twelve months." Docket No. 12 at 12. He additionally submits two reports neuropsychological evaluations conducted in August and December 2012. Docket No. 13-3. Plaintiff submitted a declaration indicating that he was unaware of the possibility of neuropsychological testing until the summer of 2012, when it was recommended by the therapist he was then seeing. Gebremedhin Hadera ("Hadera Decl.") ¶ 8 (Docket No. 13).

The first psychological report was completed by Dr. Molony on September 1, 2011, approximately three and a half months after the ALJ issued her decision. Docket No. 14-1 at 5-6. While parts of the report are nearly identical to Dr. Molony's earlier report, in this report she stated that Defendant's diagnosis had been changed from Depressive Disorder NOS to Major Depressive Disorder, Single Episode, Moderate. *Id.* at 5. She noted that his "symptomology continues to decline." *Id.* She noted that Plaintiff reported chronic physical pain which caused major sleep disturbances, lowered frustration tolerance, irritability, and depressed mood. *Id.* His frustration and

depression had been worsening over the course of treatment as he acknowledged that his physical condition will never improve. *Id.* As in her earlier report, Dr. Molony observed that Plaintiff "has significant impairments in social interactions," and concluded that "it seems reasonable to estimate that client would have difficulty handling normal work stresses based on his lowered frustration tolerance and increased irritability." *Id.* This observation appears to be at least partially based on Plaintiff's self reports. *Id.* at 5-6. Dr. Molony further reported that Plaintiff reported "genuinely wishing he were physically well enough to work a stable job, as he enjoyed his 17 years of full-time employment." *Id.* at 6. She observed that Plaintiff's "depression worsens as he realizes that his inability to maintain a job affects his ability to provide for his children." *Id.*

The second updated psychological report was completed on February 24, 2012 by a pre-doctor counseling intern, Melissa Iseri, who had been seeing Plaintiff since October 13, 2011. Docket No. 14-1 at 2-4. Iseri noted a diagnosis of Major Depressive Disorder, Single Episode, Moderate, and noted that Plaintiff's symptoms had declined continuously ever since the beginning of his treatment in February 2011. *Id.* at 2. Iseri's report concurs with the Molony reports that Plaintiff's main psychological symptoms include low frustration tolerance, irritability, and depressed mood, and that these symptoms are exacerbated by his medical problems and the realization that his physical condition will never improve. *Id.* Large sections of the report are identical, or nearly so, to the two Molony reports. *Id.* Iseri noted that as a result of Plaintiff's feelings of shame, sadness, and anger, he often isolated himself at home and had difficulty leaving the house, as he feared that he would embarrass himself around others because of his anger issues, irritability, and lowered frustration tolerance. *Id.* Further, Iseri noted that she had "observed that the client has difficulty interpreting social cues and will interpret most of his social interactions with others as being offensive, ill-intentioned, or disrespectful." *Id.* at 3. As with the Molony reports, the Iseri report noted that Plaintiff reported being unable to work since 2008, and stated that based on Plaintiff's self-reporting, "it seems reasonable that the client has difficulty handling normal work stresses, as he struggles with a lowered frustration tolerance and increased irritability." *Id.*

The first neuropsychological evaluation report is based on testing conducted by psychology intern Michael Noronha in August 2012. Docket No. 13-3 at 15-19. Though Noronha met with

1  Plaintiff twice and administered a variety of tests, the results of this examination were ultimately
2  inconclusive; Noronha wrote that Plaintiff's ability to participate in the tests "may have been
3  significantly impacted" by the medications he was taking, and by Plaintiff's related drowsiness, and
4  inattention, as well as Plaintiff's pain and depression. *Id.* at 19. For example, Noronha noted that
5  Plaintiff "seemed to need a warm up period on some tasks," that he was often uncertain of the task
6  even after receiving instructions, and that he would at times forget instructions part way through a
7  task after initially performing the task correctly. *Id.* at 18. Plaintiff's confusion was also apparent in
8  his attempts to coordinate the time and date of the testing sessions. Though Plaintiff had agreed to
9  meet Noronha at a testing site in Fremont for their initial session, Plaintiff instead showed up at the
10 Hume Center's Hayward location, thinking that he had a therapist appointment at that site on the
11 morning in question. *Id.* at 17. The appointment with his therapist was in fact the following week.
12 *Id.* Noronha ultimately discontinued the testing after Plaintiff continued to experience problems
13 with alertness in the second session. *Id.* at 19. Noronha recommended that Plaintiff not return for
14 further testing until he could make arrangements with his physician to ensure that his medication
15 side effects and other conditions could be managed such that they would not interfere with his
16 ability to maintain an adequate level of alertness for neuropsychological evaluation. *Id.* at 19.

17       Plaintiff returned for a second set of neuropsychological tests in December 2012. Docket
18 No. 13-3 at 2-14. This round of testing was conducted by Elizabeth Pearce, Psy.D. *Id.* Plaintiff
19 reported that he had refrained from taking his pain medication before these sessions in order to
20 remain more alert for the testing. *Id.* at 4-5. Dr. Pearce noted that he was cooperative with the
21 testing process. *Id.* at 5. Though some of his testing scores were abnormally low, she concluded
22 that he put forth adequate effort on testing, and that the results of the testing provided a valid and
23 interpretable evaluation of Plaintiff's level of functioning. *Id.* 6, 9.

24       Plaintiff reported to Dr. Pearce his concern that he had been experiencing memory loss and a
25 decline in his cognitive functioning over the past two years because of his depression, chronic pain,
26 and the side effects of medication he had been taking. *Id.* at 2, 5. He reported incidents where he
27 was not able to do simple arithmetic, and noted that he had trouble keeping track of his medication
28 and appointments, or remembering where he put his belongings. *Id.* at 5. Dr. Pearce noted that

1 Plaintiff's answers to questions were at times digressive, and that he appeared to have difficulty with
2 understanding and retaining testing instructions. *Id.* at 5. For example, even after expressing
3 understanding of practice items, he would often need additional reminders and clarification of
4 instructions during the course of a test. *Id.* at 5. Plaintiff's limited English and literacy skills also
5 appear to have affected his results on at least some measures. *Id.* at 5-8.

6 Dr. Pearce found that Plaintiff met the diagnostic criteria for Major Depressive Disorder,
7 Single Episode, Moderate. *Id.* at 9. She noted that he had been having depressive symptoms since
8 2007, including depressed mood, irritability, loss of interest and pleasure, decreased appetite and
9 weight loss, insomnia, fatigue, low energy, and suicidal ideation without intent. *Id.* She stated that
10 his chronic pain, medical problems, unemployment, and financial stressors "likely" exacerbated his
11 depressive symptoms. *Id.*

12 In addition to the depression diagnosis, Dr. Pearce gave Plaintiff a "rule out" diagnosis of
13 Anxiety Disorder NOS. *Id.* She noted that though he did not report current symptoms or a history
14 of anxiety, he presented as highly anxious during the testing sessions. *Id.*

15 Finally, Dr. Pearce gave Plaintiff a "rule out" diagnosis of Cognitive Disorder, NOS, noting
16 that the testing indicated that he had cognitive impairment in processing speed and executive
17 functioning. *Id.* at 10. Plaintiff performed in the low average range of intellectual functioning. *Id.*
18 at 9. Multiple tests, however, showed that his processing speed was well below average. *Id.* at 10.
19 On executive tasks, Plaintiff showed difficulty with mental flexibility, retaining instructions,
20 initiating responses, and perseveration of previous responses. *Id.* Dr. Pearce noted that there was no
21 indication that Plaintiff had a medical condition that would cause neurological decline. *Id.* She
22 stated that his impaired cognitive functioning could be accounted for by his symptoms of depression
23 and anxiety, and that his chronic pain might also contribute to his diminished cognitive functioning
24 on impairment. *Id.*

25     2. <u>Recent MRI and Related Diagnoses and Recommendations</u>

26 In addition to the new psychological records, Plaintiff also offers new records related to his
27 back problems. He submits the report from a September 26, 2012 MRI and two subsequent letters
28 from his physician making treatment recommendations based on the MRI. Docket Nos. 13-1, 13-2.

Plaintiff underwent an MRI of his lumbosacral spine on September 26, 2012. Docket No. 13-1. The MRI showed degenerative disc desiccation at multiple levels, and indicated that disc height was reduced at the L4/5 level. *Id.* There was disc bulging at multiple levels: mild in some places, but in other places more significant and accompanied by moderate or severe neural foraminal compromise. *Id.* Spinal stenosis was mild at the L3/4 level and moderate at both L2/3 and L4/5. *Id.* The radiologist additionally noted an impression of lumbar spondylosis with facetal arthropathy and ligamentum flavum hypertrophy, and recommended clinical correlation and follow up. *Id.*

After the MRI, Defendant followed up with neurosurgeon Dr. Jenny Multani. Docket No. 13-2. Plaintiff submits two letters from Dr. Multani to Plaintiff's primary care physician, Dr. Nirmala Kannan. *Id.* In the first letter, dated October 31, 2012, and briefly summarizes the history of Plaintiff's back problems. *Id.* at 4. Dr. Multani notes that Plaintiff originally noticed low back pain around the time of his hernia surgeries, and that the pain had progressively worsened to the point that he cannot walk. *Id.* She noted that Plaintiff was unable to sit for any period of time, and that it affected both his legs in a diffuse fashion with severe burning dysesthesias. *Id.* The letter recommended a CT of the lumbosacral spine, and noted that surgical intervention would likely be necessary. *Id.* at 6. The record does not indicate whether the CT scan was ever performed. Dr. Multani wrote Dr. Kannan another letter on November 6, 2012. *Id.* at 2. She described the MRI findings, and noted that Plaintiff was unable to sit or stand for any length of time, and that he had bilateral leg weakness. *Id.* She reported that physical therapy and epidural injections had failed to provide Plaintiff with any relief. *Id.* She concluded that Plaintiff would need discectomy and decompression at L2/3, L3/4, and L4-5, with interbody fusion and posterior stabilization. *Id.* Though this letter was written over six months ago, Plaintiff does not indicate whether he has had the recommended surgery.

3.  <u>Analysis</u>

Defendant argues that the above evidence doe not justify a remand because the evidence in question is not material, as it relates to the time period after the ALJ's decision issued. Defendant correctly points out that new evidence is considered material "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b).

Though the records in question here were created after the date of the ALJ's decision issued, it does not necessarily follow that the records are unrelated to the time period prior to the issuance of the decision.

Courts have recognized that records created after the date that an ALJ's decision issues may nevertheless relate to a claimant's condition prior to the date of the decision. In *Allen v. Barnhart*, for example, the court found that an MRI conducted more than a year after the ALJ's decision was material. C 02-4171 SI, 2003 WL 22384782, at *2-3 (N.D. Cal. Oct. 15, 2003). The court found that the MRI was material because it tended to corroborate the conclusions of a doctor whose opinion the ALJ had rejected for lack of objective corroboration. *Id.* *2. In light of the MRI, another doctor had assigned the plaintiff functional limitations that were inconsistent with the ALJ's conclusions. *Id.* The court found that the year that had elapsed between the ALJ's decision and the MRI did not render the MRI immaterial because the plaintiff had experienced no accidents in the interim that could have caused a sudden deterioration in the condition of his back. *Id.*

Similarly, the court in *Olivares v. Astrue* found an MRI conducted several months after the ALJ's decision to be material where it related to the back problems the claimant had raised before the ALJ. CV 10-07976 §, 2011 WL 2882212, at *4 (C.D. Cal. July 19, 2011). The court noted that the Social Security Administration subsequently determined that the Plaintiff had become eligible for disability benefits around the time the MRI had been performed. *Id.* It found that given the short period of time between the two determinations, remand was appropriate to consider the evidence from the new MRI. *Id.*

The case at bar is directly analogous to *Allen* with respect to the new MRI evidence. The ALJ was presented with the opinions of two doctors: Dr. Kannan, who opined that Plaintiff was unable to work; and Dr. Economou, who stated that Plaintiff had functional limitations in excess of what the ALJ ultimately found. AR 25-26. Both doctor's opinions were based in significant part on Plaintiff's back problems. *Id.* The ALJ rejected the opinions of both doctors in part because she found them unsupported by sufficient objective, clinical findings. AR 26. Here, the MRI provides the kind of objective findings regarding the condition of Plaintiff's spine that could arguably be found to adequately support the earlier opinions of Dr. Kannan and Dr. Economou. Though it is

certainly possible that there may have been incremental changes to the condition of Plaintiff's spine in the period between the ALJ's decision and the MRI, there is no indication in the record that Plaintiff experienced a traumatic injury that would have caused a dramatic worsening of his condition during that period. Though the gap between the ALJ's decision and the new MRI is slightly longer in this case than in *Allen* (sixteen months rather than fourteen), the proximity between the ALJ's decision and the MRI is still not so remote as to render the MRI results immaterial. As the ALJ's rejection of the doctors' opinions was based in part on the lack of objective clinical findings, there is a "reasonable probability" that the new MRI would have changed the outcome of the ALJ's determination.

Further, Plaintiff has shown good cause for failing to earlier present the MRI evidence. Plaintiff submitted a declaration indicating that he had asked his primary care physician, Dr. Kannan, for an MRI in 2010, but that Dr. Kannan had declined to order one at that time. Hadera Decl ¶ 4. Dr. Kannan instead advised Plaintiff to take pain medication and wait to see if his condition improved. *Id.* She did, however, refer him to neurologist Dr. Vicky Economou. *Id.* Though Dr. Economou did not initially recommend an MRI, she eventually did in the fall of 2012. *Id.* ¶ 5. After Dr. Economou's recommendation, Dr. Kannan finally referred Plaintiff for the MRI. *Id.* Plaintiff has been on MediCal since 2009, and his family's financial resources are extremely limited. *Id.* ¶ 7. He was thus unable to obtain an MRI prior to his Dr. Kannan's fall 2012 referral. *Id.*

The Court thus finds that Plaintiff is entitled to a sentence six remand for the consideration of the new MRI and related evidence of his back condition.[2]

The question of whether Plaintiff is entitled to a remand for consideration of the new psychological evidence is a closer one. The new treating therapist reports by Dr. Molony and Iseri

---

[2] Defendant additionally argues that even if this Court were to find that this evidence relates to the appropriate time period, remand would still not be justified because "it does not change the fact that substantial evidence supports the ALJ's decision." Docket No. 17 at 9. This argument, however, conflates the standard for sentence four remands and sentence six remands. *See* 42 U.S.C. § 405(g). The fact that Plaintiff may not be entitled to a sentence four remand on this issue (and indeed does not request one) does not mean that he is not entitled to a sentence six remand where he demonstrates that he can meet the latter standard.

are less remote in time from the ALJ's decision than the MRI, but the information contained in these reports is largely duplicative of the information in the Molony report that the ALJ considered. *Compare* Docket No. 14-1 *with* AR 594-96.  Indeed, sections of the later two reports appear to reproduce the findings of the first Molony reports almost verbatim.  Though these reports do list a new diagnosis, Major Depressive Disorder, they contain no new information regarding Plaintiff's symptoms that bear on his ability to work – his irritability and difficulty with social interactions.  Docket No. 14-1 at 3, 6.  The likelihood, therefore, that these reports would have altered the ALJ's decision is not sufficient in themselves to warrant a sentence six remand.

The two neuropsychology reports, especially the latter report conducted by Dr. Pearce, certainly contain new information that bears on Plaintiff's ability to work.  Docket No. 13-3.  For example, Dr. Pearce details Plaintiff's significant difficulties in understanding and retaining instructions.  *Id.* at 9-10.  Though she does not specifically enumerate functional limitations based on her findings, the cognitive limitations she identifies have clear implications for Plaintiff's ability to work.  On the other hand, what little discussion there is in the report addressing cognitive limitations pertains to a date significantly after the ALJ's decision.  Dr. Pearce notes, for example, Plaintiff's concerns that his memory and cognitive functioning had "been declining in the past two years due to his depression, chronic pain, and medication use." *Id.* at 5.  This suggests that Plaintiff's cognitive impairments had not been constant in the year and a half between the ALJ's decision and Dr. Pearce's report, and that they had likely been less severe during the time period considered by the ALJ.  The findings of the Pearce report, therefore, may be of limited relevance to determining whether Plaintiff had a severe mental impairment at the time of the ALJ's decision.

Accordingly, the new psychological evidence Plaintiff submits is not sufficiently material; it does not bear "directly and substantially on the matter in dispute," and would not, in itself, likely have changed the ALJ's determination.  *See Bruton v. Massanari*, 268 F.3d at 827.  It may be that in light of the Court's above ruling on the ALJ's duty to supplement the record, this question is moot, but the Court declines to order remand on the independent basis of new material information related to Plaintiff's mental health-related impairments.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED** in part. Specifically, the Court finds that Plaintiff is entitled to a sentence four remand based on the ALJ's inadequate consideration of whether he has a severe mental impairment, and a sentence six remand based on new, material evidence related to his back problems. Plaintiff's motion for summary judgment is **DENIED** as to his request for a sentence six remand to consider new evidence regarding his mental impairments.[3] Defendant's motion for summary judgment is likewise **GRANTED** in part and **DENIED** in part.

This order disposes of Docket Nos. 12 and 17.

IT IS SO ORDERED.

Dated: August 22, 2013

_____
EDWARD M. CHEN
United States District Judge

---

[3] Given the remand ordered pursuant to sentence four and sentence six, the ALJ may consider the new evidence regarding Plaintiff's mental impairments and give to it whatever weight it deserves. The fact that this evidence is not sufficiently material to warrant a sentence six remand thereon does not necessarily mean it has no relevance.